UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 10-148-DLB

ALPHONZO R. MORTON,                                          PETITIONER,

V.                    **MAGISTRATE JUDGE'S REPORT
                       & RECOMMENDATION**

COOKIE CREWS,
*Warden*, *Kentucky State Reformatory*,                      RESPONDENT.

\*\*\* \*\*\* \*\*\* \*\*\*

Petitioner, Alphonzo Morton, brings this *pro se* habeas corpus action pursuant to 28 U.S.C. § 2254 to challenge his incarceration on state convictions of second degree sexual abuse, second degree sodomy, and use of a minor in a sexual performance.  [R. 1].  Consistent with local practice, this matter has been referred to the undersigned for preparation of a Report and Recommendation. The matter having been fully briefed, and for the reasons discussed below, it is recommended that Morton's petition be denied.

## I.   FACTUAL & PROCEDURAL BACKGROUND

The Kentucky Supreme Court's factual summary is not challenged by Petitioner and therefore presumed to be correct.[1]  Morton v. Commonwealth, 2000-SC-0507-MR (Ky. 2002).  Prior to his conviction, Morton dated a woman named Vera Edwards. [Appendix at 9].  After the two had broken up, Edwards called the police to report sexual abuse. [Id.].  Upon arrival at Edwards' residence, the responding officer was met by Edwards and Kimberly Morton, Petitioner's ex-wife.

---

[1] See 28 U.S.C. § 2254(e)(1); Mitzel v. Tate, 267 F.3d 524, 530 (6th Cir. 2001).

Edwards showed the officer a photograph of P.E., Edwards' juvenile child, posed in a sexually explicit manner. [Id.]. Later in the day, the officer again went to Edwards' residence where Abigail Perkins, Petitioner's then current girlfriend, gave him more photographs depicting P.E. [Id. at 10]. In total, there were twenty such photos. [Id.]. In some of them, "private parts" of the male anatomy were visible. [Id.]. These pictures were allegedly taken some time during Edwards' and Petitioner's relationship at each of their respective residences. [Id.].

Following a jury trial in Fayette County Circuit Court, Petitioner was convicted of four counts of second degree sexual abuse, two counts of second degree sodomy, and twenty counts of use of a minor in a sexual performance. [Id. at 4-7]. The jury recommended a punishment of twelve months imprisonment on each of the four sexual abuse counts, five years on each count of sodomy, and fifteen years on each count of use of a minor in a sexual performance. [Id.]. Although the jury recommended that all the sentences be served concurrently, the trial court ordered that four of the fifteen-year sentences for the use of a minor in a sexual performance convictions be served consecutively for a total of sixty years, with the remaining sentences to be served concurrently. [Id.]. Accordingly, Morton was sentenced to a term of imprisonment totaling sixty years.

Morton filed a direct appeal, and on January 17, 2002, the Kentucky Supreme Court affirmed his conviction and sentence. [Appx. at 9-14]. Morton also filed various motions for post-conviction relief in state court, including motions pursuant to Kentucky Rules of Criminal Procedure ("RCr") 11.42 and 60.02. [Appx. at 16-48; 126-138]. These attempts having been fruitless, Morton filed a petition for a writ of habeas corpus in federal court. [R. 1].

In his petition, Morton claims that the state courts and his attorney committed numerous errors depriving him of his constitutional rights. These claims include:

2

(1)     The trial court deprived Petitioner of a fair trial and due process by failing to grant a mistrial after the jurors were threatened by a witness sympathetic to the defense;

(2)     The trial court deprived Petitioner of a fair trial and due process by restricting Petitioner's cross-examination of a witness;

(3)     Petitioner's right to a fair trial was violated when the trial court refused to grant a mistrial after Petitioner's ex-wife made prejudicial statements;

(4)     Petitioner was denied his right to the effective assistance of counsel at trial;

(5)     The trial court deprived Petitioner of due process by refusing to credit him with 230 days toward his sentence;

(6)     The trial court violated Petitioner's due process rights by failing to provide him with a copy of the grand jury transcript after Petitioner was convicted;

(7)     Petitioner's convictions violated the prohibition against double jeopardy; and

(8)     The trial court deprived Petitioner of due process by failing to follow the jury's recommendation that all of his sentences be run concurrently.

All of these claims are either procedurally defaulted, without merit, or not cognizable in a federal habeas corpus action.  Accordingly, Morton's petition for a writ of habeas corpus [R. 1] should be denied.

## II.  STANDARD OF REVIEW

Because Morton filed his habeas petition on April 19, 2010, [R. 2] it is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  It provides, in pertinent part:

(d)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

3

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Accordingly, federal habeas relief may be granted only where the state court decision is either (1) contrary to clearly established federal law or (2) involved an unreasonable application of clearly established federal law.  Williams v. Taylor, 529 U.S. 362, 412 - 13 (2000).  A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Id.  A state court decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.  A federal court may not grant a writ of habeas corpus "simply because the state court issued a decision that erroneously or incorrectly applies clearly established law; rather, the state court's application of law must have been objectively unreasonable."  Ware v. Renico, 371 F.3d 862, 865 (6th Cir. 2004) (citing Williams, 529 U.S. at 410-11).

AEDPA imposes a "highly deferential standard for evaluating state-court rulings,"  Lindh v. Murphy, 521 U.S. 320, 333, n.7 (1997), which effectively "demands that state-court decisions be given the benefit of the doubt." Woodford v. Viscotti, 537 U.S. 19, 24 (2002). It is not the role of the reviewing court "to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 68 (1991).  Rather,  "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Id.  All factual findings made by a state court are presumed correct unless rebutted by clear and convincing evidence.  28

4

U.S.C. § 2254(e)(1); Post v. Bradshaw, 621 F.3d 406, 413 (6th Cir. 2010).

### III. PROCEDURAL DEFAULT

Before reviewing the merits of a habeas petition, the Court must consider any applicable "procedural-bar issue" which would prevent consideration of a petitioner's claims on the merits. Lambrix v. Singletary, 520 U.S. 518, 524 (1997). For example, if a petitioner procedurally defaults a claim in state court, "that procedural default carries over to federal court and precludes habeas review of that claim in federal court." Simpson v. Jones, 238 F.3d 399, 406 (6th Cir. 2000). A petitioner procedurally defaults a claim in state court if he or she fails to present that claim in accordance with a state's procedural rules. Id. (citations omitted). This principle is applicable only if the last state court rendering a judgment on the claim based its judgment on the procedural default. Id. (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).

A petitioner cannot raise procedurally defaulted claims in a federal habeas proceeding unless he or she can demonstrate "cause" for the procedural default and "actual prejudice" resulting from the alleged constitutional error. Murray v. Carrier, 477 U.S. 478, 485-86 (1986); Wainwright v. Sykes, 433 U.S. 72, 87 (1977). Alternatively, procedural default may be excused if a petitioner can show that "failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991). To come within this narrow second exception, a petitioner must make a showing of actual innocence, meaning factual innocence. McCleskey v. Sant, 499 U.S. 467, 494-95 (1991); Dretke v. Haley, 541 U.S. 386, 393 - 94 (2004).

In his claim labeled "Ground Two", Petitioner argues that he was denied his right to a fair trial and due process when the trial court refused to allow him to question a witness about potentially exculpatory evidence. [R. 1 at 7]. This claim was raised on direct appeal, but rejected by the

5

Kentucky Supreme Court because it was not properly preserved for review. [Appx. at 12-13]. The facts underlying the claim of error were summarized as follows:

> [Petitioner] attempted to ask Vera Edwards, the victim's mother, several questions on cross examination that the trial court found to be irrelevant. [Petitioner] claims that he was prohibited from presenting his defense because he could not ask certain questions. [Petitioner's] theory of the case is that he did not take the pictures and that the man engaged in sexual acts with P.E. in the pictures was not [Petitioner]. [Petitioner] also alleges that it was Edwards who encouraged P.E. to be in the pictures with some other man because Edwards was a sexual deviant.
>
> [Petitioner's] counsel first attempted to ask Edwards whether her current boyfriend was on parole. The trial court sustained the Commonwealth's objection. Later, she asked Edwards whether she had ever been asked questions to determine if she fit the profile of a sex offender. [Petitioner's] counsel stated the reason for this question was alleged sexual abuse by Edwards' father. The trial court then stated that [Petitioner's] counsel must obtain approval of the court prior to asking any more questions because the court did not trust counsel. [Petitioner's] counsel informed the court that her next question would be whether Edwards' father had ever sexually abused her. Also, counsel wanted to ask her about her deviant sexual interests. The Commonwealth objected and the court sustained stating that the evidence was to be limited to child pornography and that Edwards' and [Petitioner's] sexual relations were irrelevant.

[Id.]. Citing Kentucky Rule of Evidence 103(a)(2), the court rejected this claim of error because defense counsel failed to preserve it for review by requesting that Edwards offer her answers to the proposed questions by avowal. [Id. at 13].

Petitioner's federal claim was denied by the state court on procedural grounds, and this Court cannot review "claims that a state court has declined to address, because of a petitioner's noncompliance with a state procedural requirement." Howard v. Bouchard, 405 F.3d 459, 475 (6th Cir. 2005). The Sixth Circuit has articulated a four-part test to determine whether a procedural default in state court carries over to federal court and precludes review of a claim:

> (1) whether there is a state procedural rule that is applicable to the petitioner's claim; (2) whether the petitioner failed to comply with that rule; (3) whether the procedural rule was actually enforced in the petitioner's case; and (4) whether the state

procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim.

Id. at 477.

Here, all four prongs are readily satisfied. Ky. R. Evid. 103(a)(2) is an applicable state procedural rule that was actually enforced in Petitioner's case. This rule states that when an objection to a question propounded to a witness is sustained, the issue can be preserved for appellate review only through an avowal of the witness's testimony in response to the excluded question. Ky. R. Evid. 103(a)(2); see also Commonwealth v. Ferrell, 17 S.W.3d 520, 523-24 (Ky. 2000). Under the fourth prong, a state procedural rule is "adequate" if it is "firmly established and regularly followed." Wilson v. Mitchell, 498 F.3d 491, 499 (6th Cir. 2007) (citations and quotations omitted). A procedural rule is independent when it does not rely on federal law. Id. Here, Ky. R. Evid. 103 does not rely on any federal law to foreclose appellate review, and has been regularly followed by Kentucky courts. See, e.g., Ferrell, 17 S.W.3d at 523-24; Rock v. Commonwealth, No. 2005-SC-290-MR, 2006 WL 2987092, *3 (Ky. 2006); Quarles v. Commonwealth, 142 S.W.3d 73, 87 (Ky. 2004); Caldwell v. Commonwealth, 133 S.W.3d 445, 450 (Ky. 2004); Noel v. Commonwealth, 76 S.W.3d 923, 931 (Ky. 2002). Finally, Petitioner failed to comply with this rule since it is undisputed that defense counsel did not seek avowal testimony from Vera Edwards after the trial court disallowed the proposed line of questioning.

While claiming that trial counsel performed ineffectively by failing to preserve a claim for review in state court might provide grounds for excusing default, the ineffective assistance claim itself is subject to procedural default. Edwards v. Carpenter, 529 U.S. 446, 452-53 (2000); Landrum v. Mitchell, 625 F.3d 905, 916 (6th Cir. 2010). A petitioner may procedurally default an ineffective assistance of counsel claim by failing to comply with the exhaustion requirement of 28 U.S.C. §

7

2254(b)(1)(A).  <u>Murray</u>, 477 U.S. at 488-89.  This rule requires a petitioner to "fairly present" the "substance" of his federal habeas claim to the state courts, so that the state judiciary may have the first opportunity to hear the claim.  <u>Lyons v. Stovall</u>, 188 F.3d 327, 331 (6th Cir. 1999).  If a petitioner does not present his claim to the state court, and no state remedies are available, the unexhausted claim is procedurally defaulted.  <u>Hannah v. Conley</u>, 49 F.3d 1193, 1195-96 (6th Cir. 1995).

Kentucky law permits a defendant to file one post-conviction motion within three years of final judgment.  Ky. R. Crim. P. 11.42(10).  All possible grounds for relief must be presented in that motion, and the prisoner will be barred from later raising any issue "that could reasonably have been presented."  Ky. R. Crim. P. 11.42(3).  The Court has reviewed Morton's RCr. 11.42 motion  to determine whether he fairly presented a claim that trial counsel was ineffective for failing to preserve for review the trial court's limits on his cross-examination of Vera Edwards.  Morton presented a number of ineffective assistance of counsel claims, but none of them relate to trial counsel's failure to preserve this claim.  Accordingly, because no further state remedies are available, Morton procedurally defaulted the ineffective assistance of counsel claim he purports to be cause.  Because there is no cause to excuse Petitioner's default, his claim that the trial court violated his constitutional rights by restricting cross-examination of Edwards cannot be reviewed.

## IV.  ANALYSIS OF REMAINING CLAIMS

Respondent argues that Morton's remaining claims are either without merit or raise issues of state law not cognizable in a federal habeas corpus proceedings.  For the reasons discussed below, the Court agrees.

8

A.      **Failure to Grant Mistrial**

Grounds One and Three of Morton's petition assert that the state trial court violated his right to due process and a fair trial by denying his motions for a mistrial.  First, he claims that a mistrial should have been granted after jurors were threatened by a witness sympathetic to the defense. [R. 1 at 6].  Second, a mistrial should have occurred after Petitioner's ex-wife made prejudicial statements in the presence of the jury. [Id. at 7].  Both of these claims were addressed and rejected by the Kentucky Supreme Court on direct appeal.

The state court summarized the facts underlying the first claim as follows:

> [Petitioner's] mother, Elanore Morton, collapsed at some point after the evidence was concluded.  She was treated by paramedics and taken to the jurors' lounge to rest.  While she was there, several jurors entered the room.  Mrs. Morton became emotional, or went "berserk" in the court's words, in front of these jurors.  The bailiff called for help and three Sheriff's units arrived.  The trial court interviewed Mrs. Morton who denied having spoken to any of the jurors.  She did say that Abigail Perkins, [Petitioner's] girlfriend, made threatening statements to the jurors.

> The trial court interviewed the jurors who may have witnessed the episode about Mrs. Morton's reaction and the statements made by Perkins.  The jurors stated that their sentencing decision would not be influenced by what they saw and that they could make their decision based only on the evidence.  However, one juror stated that Perkins approached her in a threatening way and said "damn you."  Another juror was approached by Perkins in a similar manner.  Mrs. Morton approached one juror threateningly and Perkins had to hold her back. Some of the jurors even expressed understanding for the emotional display by Mrs. Morton. [Petitioner] moved for a mistrial claiming that the jurors could not be unbiased after witnessing such outbursts.  The court denied the motion but admonished the jury to disregard the incident and apologized for someone being in the jurors' lounge.

[Appx. at 10-11].  Morton claimed that he should have been granted a mistrial because these events deprived him of a fair trial.

The Kentucky Supreme Court disagreed, stating that it was "within the discretion of the trial court to decide whether to declare a mistrial when there is not a 'matter of substance ... involved.'"

9

Id. (quoting Jones v. Commonwealth, 662 S.W.2d 483, 484 (Ky. Ct. App. 1983)).  The court found that no substance was involved in the contact between the jurors and Perkins or Mrs. Morton because nothing was said about the trial or sentencing.  The court further noted that the trial judge interviewed the affected jurors who stated they could be impartial after the incident.  The judge nevertheless also admonished the jurors not to consider the incident.  Id. at 12.  Under these circumstances, the court held that Morton failed to demonstrate that there was "a manifest necessity or an urgent or real necessity" for the trial court to grant a mistrial.  Id. at 11 (citing Skaggs v. Commonwealth, 694 S.W.2d 672, 678 (Ky. 1985)).

Although Petitioner claims that the state court's determination was incorrect, he cites no federal law to support his position.  Due process guarantees a defendant the right to be tried by a panel of impartial, indifferent jurors.  See Irvin v. Dowd, 366 U.S. 717, 722 (1961).  When it appears that a jury has been subjected to improper outside influence, the trial court may need to hold a hearing with all interested parties.  See Remmer v. United States, 347 U.S. 227, 229-30 (1954).  The purpose of such a hearing is to determine whether the outside contact led to juror prejudice or bias.  Id. at 230.[2]  In this case, the trial court interviewed both Mrs. Morton and the jurors who witnessed the incident.  The jurors indicated that they could be impartial despite the outbursts by Perkins and Mrs. Morton.[3]  The trial judge also admonished the jurors to disregard the behavior by Petitioner's

_____

[2] The Sixth Circuit has "specifically held that not all communications with jurors warrant a hearing for a determination of potential bias." White v. Smith, 984 F.2d 163, 166 (6th Cir.1993).  Rather, for the trial court to "conduct a Remmer hearing, 'a defendant must do more than simply raise the possibility of bias.'"  United States v. Vining, 224 Fed. Appx. 487, 492 (6th Cir. May 31, 2007) (citations omitted).

[3] A transcript of this exchange is not part of the record before the Court.  The Kentucky Supreme Court's recitation of the facts, however, is not challenged by the Petitioner and entitled to a presumption of correctness.

mother and girlfriend.  Having determined that improper juror contact did not prejudice Morton, the

trial court did not abuse its discretion in denying his motion for a mistrial.  Staton v. Parke, 12 F.3d

214, 1993 WL 483210, *2 (6th Cir. 1993) (table) ("[B]ecause the trial judge is in the best position

to evaluate the prejudicial effect of a spectator's outburst, the decision on whether to grant a mistrial

lies within his sound discretion.").  Petitioner has not presented this Court with any evidence of

actual juror prejudice that would cast doubt on the reasonableness of the state court's determination.

In the absence of a showing of actual prejudice, this Court cannot say that the decision not to declare

a mistrial violated Petitioner's due process rights.  See Smith v. Phillips, 455 U.S. 209, 215 (1982)

("This Court has long held that the remedy for allegations of juror partiality is a hearing in which

the defendant has the opportunity to prove actual bias."); Zuern v. Tate, 336 F.3d 478, 486 (6th Cir.

2003) (petitioner has burden of showing actual prejudice to prevail on a claim of improper juror

contact); United States v. Vining, 224 Fed. Appx. 487, 493 (6th Cir. 2007) ("No presumption of

prejudice arises from an unauthorized contact with the jury... .  [The] Defendant bears the burden

of proving actual juror bias.") (internal citations and quotations omitted).

Morton also claims that a mistrial should have been granted after his ex-wife made

prejudicial statements while on the witness stand.  This issue was likewise addressed by the state

court on direct appeal:

> [Petitioner's] ex-wife testified that Perkins, [Petitioner's] girlfriend, told her that she
> had been beaten by [Petitioner]. [Petitioner] claims he was prejudiced by this
> statement to the point of being denied a fair trial and should have been granted a
> mistrial.
>
> [Petitioner] has clearly not met the standard for requiring a mistrial.  There was one
> statement referring to this alleged abuse and [Petitioner] himself testified that Perkins
> had taken a temporary restraining order out against him.  As [Petitioner] did not seek
> other relief, there was no error by the trial court in denying the motion for a mistrial.

11

[Appx. at 14].

Once again, Petitioner does not cite federal law to support his claim that the trial court's failure to grant a mistrial deprived him of due process and a fundamentally fair trial. It is not clear if the trial judge provided a limiting instruction following the ex-wife's statement, but even if one had not been provided, the improper admission of evidence deprives a defendant of due process only if the error is so egregious that it offends "some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." Bugh v. Mitchell, 329 F.3d 496, 512 (6th Cir. 2003) (citations omitted). In the absence of further development by the Petitioner, this isolated incident does not appear to be so prejudicial that it deprived him of a fundamentally fair trial. Accordingly, the Kentucky Supreme Court's decision that there was no manifest necessity for a mistrial was not contrary to any clearly established federal law.

**B.   Ineffective Assistance of Counsel**

Petitioner also claims that he was deprived of his Sixth Amendment right to the effective assistance of counsel. He claims that trial counsel performed ineffectively by (1) failing to obtain dismissal of misdemeanor charges barred by the statute of limitations, (2) failing to object to the introduction of perjured testimony, and (3) failing to present all available exculpatory evidence. The first and second claims are also presented as stand-alone errors made by the trial court, but these are procedurally defaulted since Morton failed to raise them on direct appeal.

To prevail on a claim of ineffective assistance of counsel, the burden is on the defendant to demonstrate that (1) counsel's representation fell below an objective standard of reasonableness and (2) that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). With respect to the first element, the proper measure of attorney performance is

12

simply reasonableness under prevailing professional norms.  Id. at 688.  Prejudice occurs where there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."   Id. at 694.  The Supreme Court has cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential ... .  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689.  "Defendants alleging the ineffective assistance of counsel bear 'a heavy burden of proof.'" Pough v. United States, 442 F.3d 959, 966 (6th Cir. 2006) (citing Whiting v Burt, 395 F.3d 602, 617 (6th Cir. 2005)).

## 1.  Statute of Limitations

Petitioner was convicted of four counts of Second Degree Sexual Abuse, a Class A misdemeanor under Ky. Rev. Stat. § 510.120. [Appx. at 4].[4]  Pursuant to Kentucky law in effect at the time, the prosecution of any offense other than a felony must have been commenced within one year after it was committed.[5]  Petitioner contends that his misdemeanor charges were obtained in violation of the statute of limitations and his attorney performed ineffectively by not seeking dismissal of those charges.

---

[4] Count 1 of the indictment charged Morton with Second Degree Rape, a Class C Felony.  The jury, however, convicted him of the lesser included offense of Second Degree Sexual Abuse, a misdemeanor.  See Morton, 2004 WL 1367412 at *2.  Counts 4-6 charged Morton with Second Degree Sexual Abuse. [Appx. at 50].  Thus he had four total misdemeanor convictions.

[5] Ky. Rev. Stat. § 500.050 was amended in 2008, after Petitioner was indicted and convicted, to read as follows:

> For a misdemeanor offense under KRS Chapter 510 when the victim is under the age of eighteen (18) at the time of the offense, the prosecution of the offense shall be commenced within five (5) years after the victim attains the age of eighteen (18) years.

2008 Ky. Acts ch. 72 § 6.

Petitioner raised this claim in his state court RCr. 11.42 motion.  That court addressed the merits of Petitioner's claim pursuant to the standard set forth in Strickland.  Morton, 2004 WL 1367412 at *3-4.  The court found that although counsel did perform deficiently, Morton failed to demonstrate that he was prejudiced by his attorney's errors.

> In the present matter, the [Fayette] County Grand Jury indicted Morton on three counts of second-degree sexual abuse, a class A misdemeanor, on September 13, 1999. The offenses underlying the charges were committed from January through March 1998, well over one [year] prior to the return of the indictment. For this reason, we agree with Morton and the trial court that his counsel was ineffective for failing to bring this information to the attention of the trial court. However, we also agree with the trial court and the Commonwealth that Morton cannot establish that he was prejudiced in any way as the photographs and testimony supporting those charges were at the same time being used to support the use of a minor in a sexual performance charges. Furthermore, Morton only received twelve-month sentences for each sexual abuse conviction, which were to be served concurrently with his total sixty-year sentence, so his length of incarceration would not be affected. Because Morton cannot satisfy both prongs of the Strickland test, his argument must fail.

Id. at *4.  Respondent argues that this conclusion by the state court was not contrary to, or an unreasonable application of, the Strickland prejudice prong.

The Court is at a disadvantage in addressing this claim because neither Morton nor the Respondent have cited any case law that would be helpful in determining whether Morton's misdemeanor convictions are prejudicial within the meaning of Strickland.  In United States v. Ball, the Supreme Court stated that a separate conviction, regardless of whether its sentence was imposed concurrently with another equal or greater sentence, has potential adverse consequences to a defendant.  Ball, 470 U.S. 856, 865 (1985).

> For example, the presence of two convictions on the record may delay the defendant's eligibility for parole or result in an increased sentence under a recidivist statute for a future offense. Moreover, the second conviction may be used to impeach the defendant's credibility and certainly carries the societal stigma accompanying any criminal conviction.  Thus, the second conviction, even if it results in no greater sentence, is an impermissible punishment.

Id. (citations omitted).

Ball, however, was not a habeas corpus case and did not address the issue of prejudice in the Strickland context. The defendant in Ball was convicted of illegally receiving and illegally possessing the same firearm under two separate statutes and was sentenced to concurrent terms of three and two years imprisonment. Id. at 857-58. The Supreme Court, however, held that separate convictions for receiving and possessing a firearm violated Ball's double jeopardy rights because they were the same offense. Id. at 861-62 ("proof of illegal receipt of a firearm *necessarily* includes proof of illegal possession of that weapon.") (emphasis in original). Accordingly, the Court held that the only remedy would be to vacate one of the convictions: "[t]he second conviction, whose concomitant sentence is served concurrently, does not evaporate simply because of the concurrence of the sentence." Id. at 864-65.

A number of circuits, including the Sixth, have found that prejudice under Strickland does not include the type of potential future consequences discussed in Ball. Instead, the question is whether counsel's deficient performance has an effect on the petitioner's current custody. See Green v. United States, 65 F.3d 546, 550 (6th Cir. 1995) (even if a shorter concurrent sentence was the result of deficient performance by counsel, there was no prejudice because the error "would have had no effect on the length of time [the petitioner] must spend in prison"); Gauthier v. Mekusker, 186 Fed. Appx. 903, 911-12 (11th Cir. 2006); United States v. Alanis, 88 Fed. Appx. 15, 24 (5th Cir. 2004); United States v. Provenzano, 200 F.3d 815, 1999 WL 1095327, *3 (5th Cir. 1999) ("when a petitioner challenges a sentence that is being served concurrently with an unchallenged sentence of equal length, he cannot show prejudice under Strickland"); see also Hill v. United States, 109 F.Supp.2d 741, 744 (N.D. Ohio 2000) (petitioner could not show prejudice where lack of effective

15

assistance would have had no effect on the length of time he would spend in prison); United States v. Hernandez-Munguia, No. CR-02-213, 2008 WL 5412458, *2-3 (E.D. Cal. Dec. 29, 2008) ("the prejudice analysis looks to the result of the criminal trial and not possible future collateral consequences of deficient performance by counsel.").  Because all of Morton's lengthier, concurrent sentences stand, vacating his misdemeanor convictions would have no impact on the amount of time he spends in prison.

In Gauthier, the Eleventh Circuit Court of Appeals addressed a situation very similar to the one presented here.  The petitioner in that case had been convicted in Florida of two counts of capital sexual battery, three counts of sexual activity with a child, and two counts of lewd assault. Gauthier, 186 Fed. Appx. at 904.  He was sentenced to two terms of life imprisonment on the sexual battery convictions, three terms of 22 years imprisonment on the sexual activity with a child convictions, and two terms of 15 years imprisonment on the lewd assault convictions, with all terms to run concurrently.  Id. at 905.  In post-conviction proceedings, Gauthier claimed his trial attorney performed ineffectively by failing to move for dismissal of the lewd assault charges on the basis that they were barred by Florida's statute of limitations.  Id. at 904.

As in this case, the respondent argued that any error was harmless because the petitioner's total concurrent sentence was not affected by the sentences imposed for lewd assault.  Id. at 907. In addressing the parties' arguments, the court first noted that the lewd assault charges were in fact time-barred.  Id. at 911.  The court nevertheless held that counsel did not render ineffective assistance of counsel under Strickland, because the petitioner failed to demonstrate that he was prejudiced by any error.  Id.  In reaching this conclusion, the court relied on the fact that Gauthier failed to identify any evidence that would not have been admissible if the lewd assault charges had

been dismissed prior to his trial.  Regardless of whether the charges were dismissed, the same evidence used to convict him of the other, more serious charges would have come in.  Id.  Second, Gauthier did not demonstrate that the lewd assault convictions caused him collateral harm, such as affecting his eligibility for parole.  Id. at 912.

Similarly, the state court in this case noted that the photographs and testimony supporting the more serious charges would have been admissible regardless of whether the misdemeanor charges were dismissed.  Morton, 2004 WL 1367412 at *4.  The court also found that the misdemeanor sexual abuse convictions would not have any impact on the amount of time Morton spends in custody.  Finally, Petitioner has not directed the Court to any collateral harm he would suffer as a result of the misdemeanor convictions.  As the Sixth Circuit has noted, § 2254(d)(1) "tells federal courts: Hands off, unless the judgment in place is based on an error grave enough to be called 'unreasonable.'"  Herbert v. Billy, 160 F.3d. 1131, 1135 (6th Cir. 1998) (quoting ).  In this case, the state court cannot be said to have unreasonably applied the prejudice prong of Strickland.  This ineffective assistance of counsel claim should therefore be denied.

## 2.  Perjured Testimony

Morton also contends that all of his convictions should be set aside because they were obtained by perjured testimony to which his attorney failed to object.  [See R.1 at 7-9].  Morton, however, does not specify in his habeas petition what testimony he believes was false.  This claim was also raised in Morton's RCr. 11.42 motion and denied by the state courts:

> Morton next argues that the trial court erred by not finding that his counsel was ineffective in her cross-examination in that she failed to establish his allegations of perjury. In both his brief and his memorandum filed in the trial court, Morton identifies what in his opinion are misstatements of witnesses that his counsel failed to object to or impeach effectively. Morton's allegations alone that witnesses were not testifying truthfully are not enough to support his claim for relief. He did not

include any affidavits or other similar proof to support his allegations that any of the witnesses were less than truthful. Furthermore, Morton's trial counsel did cross-examine the Commonwealth's witnesses and sought to test their credibility. However, it was the province of the jury to decide which witnesses were credible and which were not, and there was sufficient evidence before the jury to support its ultimate verdict. Therefore, Morton cannot establish that his trial counsel was ineffective in her cross-examination.

Morton, 2004 WL 1367412 at *4.

This determination was neither contrary to, nor an unreasonable application of, clearly established federal law. "A conviction obtained by the knowing use of perjured testimony must be set aside if 'the false testimony could ... in any reasonable likelihood have affected the judgment of the jury ... .'" Rosencrantz v. Lafler, 568 F.3d 577, 583 (6th Cir. 2009) (quoting Giglio v. United States, 405 U.S. 150, 154 (1972)). The prosecution may violate a defendant's due process rights by either soliciting false evidence or allowing it to go uncorrected. Brooks v. Tennessee, 626 F.3d 878, 894 (6th Cir. 2010) (citing Napue v. Illinois, 360 U.S. 264, 269 (1959)). Accordingly, to demonstrate that his attorney performed ineffectively by failing to object, Morton would have to show (1) the testimony was actually false; (2) the testimony was material; and (3) the prosecution knew the testimony was false. Coe v. Bell, 161 F.3d 320, 343 (6th Cir. 1998) (citations omitted). Petitioner has not satisfied any of the three elements.[6]

Morton contends that the following witnesses made false statements during his trial: (1) police officer John S. Gibbons, (2) detective Jesse Harris, (3) Morton's ex-wife Kimberly Morton, (4) Morton's ex-girlfriend and mother of the victim, and (5) the victim, P.E. [Appx. at 39-46]. As the state court correctly noted, Morton's allegations are completely unsupported. He points to no existing or newly-discovered evidence that would cast doubt on the veracity of these witnesses.

---

[6] Because Morton failed to provide the factual basis underlying this claim in his federal habeas petition, the Court looks to the allegations set forth in his state RCr. 11.42 motion. [Appx. at 39- 46].

With respect to officer Harris, Morton alleges that he committed perjury by stating that a police report was not made following the initial contact with Vera Edwards. Morton claims his attorney performed ineffectively by failing to object or seek production of the police report. Morton, however, has not presented any evidence that such a report exists or even attempted to explain how it would be material to his conviction. Next, he claims that detective Harris gave false testimony to the grand jury and that his attorney failed "to object and produce the reports." [Appx. at 42]. It is not clear what reports Morton's attorney should have sought. Nor is there any evidence whatsoever that Harris gave false testimony. With respect to the remaining witnesses, Morton simply argues that any testimony incriminating him must be false because he was not the person who took the photographs and sexually abused the victim. He also claims that P.E. and Vera Edwards made inconsistent statements. These arguments simply go to the credibility of the witnesses, and the state court found that "trial counsel did cross-examine the Commonwealth's witnesses and sought to test their credibility." Morton, 2004 WL 1367412 at *4. There is nothing "objectively unreasonable" about the state court's determination, and this ineffective assistance of counsel claim should be denied. Ware, 371 F.3d at 865.

### 3. Failure to Present Exculpatory Evidence

Petitioner's third and final ineffective assistance of counsel claim relates to his attorney's alleged failure to present exculpatory evidence. [R.1 at 10]. This claim was raised in Morton's state post-conviction motion and denied.

> Morton also argues that his trial counsel was ineffective in failing to interview and call other witnesses to support his defense, as well as in her examination of him at trial. Although it does not appear that he raised these deficiencies below, we shall nevertheless hold that such actions, or inaction, are not sufficiently supported by evidence and may be attributed to trial strategy. It is of note that the jury did not convict Morton on the second-degree rape charge, but rather convicted him on the lesser-included charge of sexual abuse. Likewise, the jury only recommended that

19

Morton be sentenced to a total of fifteen years by recommending that the multiple sentences be served concurrently.

Morton, 2004 WL 1367412 at *5.  This determination by the state court is not contrary to any clearly established federal law.

Once again, the Court looks to Morton's RCr. 11.42 motion to discern the factual basis for his claim. [Appx. at 37-38].  In that motion, Morton claimed that his attorney failed to present evidence of his innocence and failed to adequately prepare for trial. [Id.].  Morton, however, does not identify what evidence he believes should have been introduced, which witnesses he wanted to be called, or what steps his attorney should have taken to better prepare for trial.  Petitioner has the burden of "showing what evidence counsel should have pursued and how such evidence would have been material."  Hutchison v. Bell, 303 F.3d 720, 748 (6th Cir. 2002) (citations omitted).  He has not even made a cursory attempt at satisfying this burden.  Morton's vague, conclusory, and unsupported allegations "are insufficient to sustain his burden of establishing a violation of his sixth amendment right to effective assistance of counsel."  Lynott v. Story, 929 F.2d 228, 232 (6th Cir. 1991).

## C.    Sentence Credit

In "Ground Eight" Morton claims that the trial court deprived him of due process by refusing to credit him with 230 days of jail time. [R. 1 at 11].  Like most of Morton's claims, the factual basis can only be discerned by examining the state court record.  On September 2, 2004, Petitioner filed a motion for jail time credit pursuant to state law. [Appx. at 77-78].  In his motion, Morton claimed that his sentence should have been credited with the 230 days he spent in home confinement while on pretrial release. [Id.].  The lower court denied the motion, and on appeal, the state court held that Morton was not entitled to jail-time credit for time he spent in home incarceration as part of his

20

pretrial release.  Morton v. Commonwealth, No. 2005-CA-87-MR, 2006 WL 1867933, *1-2 (Ky. Ct. App. 2006).

The Respondent argues that Morton's claim is not cognizable in a federal habeas action because the alleged miscalculation of a sentence is a matter of state law. [R. 14 at 20].  Morton responds by arguing that the state court's misapplication of state law violated his due process rights under the Fourteenth Amendment. [R. 18 at 2].

Whether a state prisoner has a right to credit for time served before sentencing is clearly a matter of state law.  See Howard v. White, 76 Fed. Appx. 52, 53 (6th Cir. 2003) ("A state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only.").  State law in this case is clear: "jail-time credit is not allowed for time spent in home incarceration where it is ordered as a form of pretrial release."  Buford v. Commonwealth, 58 S.W.3d 490, 491 (Ky. Ct. App. 2001); see also Miller v. Commonwealth, No. 2002-SC-527-MR, 2005 WL 119745, *6 (Ky. 2005).  Where state courts have spoken on a matter of state law, it is not the role of a federal habeas court "to reexamine state-court determinations of state-law questions."  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Nevertheless, an error of state law is cognizable in a federal habeas corpus proceeding if it amounts to a fundamental miscarriage of justice or a violation of due process.  See Floyd v. Alexander, 148 F.3d 615, 618-19 (6th Cir. 1998).  "As a general rule, a state prisoner has no federal constitutional right to credit for time served prior to sentencing absent a state statute granting such credit." Palmer v. Dugger, 833 F.2d 253, 254 (11th Cir.1987); see also Travis v. Lockhart, 925 F.2d 1095, 1097 (8th Cir. 1991).  The statutes cited by Morton in his state court motion do not expressly grant sentencing credit for time spent in pretrial home incarceration.  Ky. Rev. Stat. §§ 532.120(3); 532.210(1)(a); 533.030(6).  As already discussed, state court decisions have clearly held that state

21

prisoners are *not* entitled to such credit. Accordingly, there is no misapplication of state law on which Morton's due process claim could rest, and therefore, this claim should be denied.

**D.     Grand Jury Transcript**

"Ground Nine" of the petition alleges that the prosecution violated Morton's constitutional rights by failing to produce a transcript of the grand jury proceedings. [R. 1 at 12]. "Ground Eleven" claims that the prosecution did not transcribe the grand jury proceedings, thereby depriving Morton of the ability to cross examine witnesses about their false testimony. [Id. at 14]. Again, the petition itself is short on facts, so the Court relies on the state court record to discern the basis for these claims.

On September 27, 2004, Petitioner filed a motion in state court seeking a transcript of the grand jury proceedings. [Appx. at 79-81]. The trial court denied the motion, but the appellate court reversed and directed that a transcript be made available to Morton at his cost. Morton, 2006 WL 1867933 at *2. In response to the state court's order to make a transcript available, the Commonwealth noted that the grand jury proceedings were recorded on cassette tape. A copy of the tape was provided to Morton's attorney in discovery prior to trial, but the Commonwealth was unable to locate the grand jury tape and therefore could not produce and provide a transcript. [Appx. at 103]. Morton claims the failure to produce a grand jury transcript violated his due process rights.

This claim is not cognizable in a federal habeas corpus action. 28 U.S.C. § 2254 is only available for claims alleging that a state prisoner is in custody in violation of the Constitution or laws of the United States. "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). Here, Morton's request for a grand jury transcript came by way of a state court motion made more than two years after his conviction and

sentence had become final.  Even if the Commonwealth violated some federal law by failing to provide one, correcting such error would have no impact on the legality of Morton's sentence. Claims of the denial of due process in collateral proceedings are simply not cognizable in federal habeas corpus cases.  See, e.g., Kirby v. Dutton, 794 F.2d 245, 246-47 (6th Cir. 1986).

On March 1, 2007, Petitioner filed another motion in state court seeking to have the indictment dismissed and his convictions vacated based of the Commonwealth's alleged failure to make a record of the grand jury proceedings. [Appx. at 105-115].  In support, Petitioner cited Kentucky Rule of Criminal Procedure 5.16 which states that the failure to make a record of grand jury testimony is grounds for dismissal of the indictment unless the Commonwealth can show good cause for the failure.  The state courts ultimately denied Morton's motion, finding that the failure to comply with RCr. 5.16 does not require dismissal.  Morton v. Commonwealth, No. 2007-CA-746, 2008 WL 541279, *1 (Ky. Ct. App. 2008) (citing Jackson v. Commonwealth, 20 S.W.3d 906, 909 (Ky. 2000).

Once more, Morton's federal claim fails because issues of state law cannot be reviewed by a federal habeas court.  Moreover, it does not appear that the Constitution requires that grand jury proceedings be recorded.  United States v. Hensley, 374 F.2d 341, 352 (6th Cir. 1967); see also United States v. Lamoureux, 711 F.2d 745, 747 (6th Cir. 1983) (inadvertent loss of a grand jury transcript does not require dismissal of the indictment); Fed. R. Crim. P. 6(e)(1) ("the validity of a prosecution is not affected by the unintentional failure to make a recording [of grand jury proceedings].").  Accordingly, Morton's claims relating to the grand jury record should be denied.

23

### E.  Double Jeopardy

Grounds Ten and Twelve of the petition assert that Petitioner's convictions violate the prohibition against double jeopardy.  Specifically, he argues that the multiple counts alleging use of a minor in a sexual performance and the counts alleging sodomy all involved a single course of conduct. [R. 1 at 13, 15].  Morton raised this claim for the first time in a RCr. 60.02 motion filed in state court on April 7, 2008. [Appx. at 126- 137].  Although the last state court rendering a decision on this claim noted that it was not a proper ground for relief in a RCr. 60.02 motion because it could have been raised on direct appeal, the court nevertheless denied it on the merits.[7]  Morton v. Commonwealth, No. 2008-CA-915, 2009 WL 875450, *2 (Ky. Ct. App. 2009).

The Double Jeopardy Clause of the Fifth Amendment provides that no person may "be subject to the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V.  The purpose of this clause is to protect against multiple punishments for the same offense. Missouri v. Hunter, 459 U.S. 359, 366 (1969) (citations omitted).  A single transaction, however, may give rise to distinct criminal offenses without violating the prohibition against double jeopardy. Albernaz v. United States, 450 U.S. 333, 344 n. 3 (1981).  "Whether punishments are 'multiple' under the double jeopardy clause is essentially a question of legislative intent."  Banner v. Davis, 886 F.2d 777, 779-80 (6th Cir.1989) (citing Ohio v. Johnson, 467 U.S. 493, 499 (1983)).  A federal habeas court is bound by a state court's construction of its own statutes and a state court's determination of its legislature's intent.  Id. at 780.

---

[7] It is likely that Morton's double jeopardy claim is procedurally defaulted.  The Respondent, however, did not make that argument.  While the Court may raise procedural default *sua sponte*, there is concern about doing so where the petitioner has not had an opportunity to respond.  Howard v. Bouchard, 405 F.3d 459, 476 (6th Cir. 2005).  Accordingly, the Court will address the merits of this claim rather than finding it procedurally defaulted.

In Kentucky, a person is guilty of use of a minor in a sexual performance "if he employs, consents to, authorizes or induces a minor to engage in a sexual performance."  Ky. Rev. Stat. § 531.310(1).  A sexual performance is defined as "any performance or part thereof which includes sexual conduct by a minor ... ."  Ky. Rev. Stat. § 531.300(6).  A performance includes "any play, motion picture, *photograph* or dance."  Ky. Rev. Stat. § 531.300(5) (emphasis added).

In Williams v. Commonwealth, the Kentucky Supreme Court was presented with six digital photographs taken by Williams of his eight-year-old stepdaughter on or about January 22, 2001. Williams, 178 S.W.3d at 493.  Based on four of the photographs, Williams was convicted of four counts of use of a minor in a sexual performance.  Id.  On direct appeal, he argued that the four pictures were taken as part of a single course of conduct, and therefore, he could only be charged with a single crime.  Id. at 494.  Based on the plain language of the relevant statutes, the court found that the state legislature intended that a person could be prosecuted for each photograph involving a minor engaged in a sexual performance.  Accordingly, it held that "a person who generates differing and multiple prohibited photographs or causes a child to engage in the creation of such photographs commits multiple offenses of KRS 532.310, even though each such differing photograph involves the same subject captured in a narrow timeframe."  Id. at 495.

"As stated, the double jeopardy inquiry for a statute relies on the state legislature's intent, which, when determined by a state appellate court, is not reviewable by a federal court."  Hack v. Elo, 38 Fed. Appx. 189, 195 (6th Cir. 2002).  Here, the Kentucky Supreme Court has conclusively determined that the state legislature intended for a defendant to be prosecuted under Ky. Rev. Stat. § 531.310(1) for each photograph depicting sexual conduct by a minor.  It is undisputed that Morton caused a minor to engage in sexual conduct and produced twenty separate photographs depicting that conduct.  Based on those facts, the state court relied entirely on Williams in rejecting Morton's

25

double jeopardy claim.  Morton, 2009 WL 875450 at *2.  That determination is not contrary to, or an unreasonable application of, federal law.  This claim should be denied.

Morton also contends that his two convictions for second degree sodomy violated double jeopardy.  Under Kentucky law, a person is guilty of sodomy in the second degree if "he engages in deviate sexual intercourse with another person less than fourteen (14) years old ... ."  Ky. Rev. Stat. § 510.080(1)(a).  Morton argues that his multiple sodomy convictions arose from a single course of conduct, and that the multiple uninterrupted acts of sodomy constitute only one offense.  [See Appx. at 132-33].

The state appellate court rejected this claim, finding that a minor female child less than 14 years of age performed oral sex on Morton several times between January and March of 1998.  Morton, 2009 WL 875450 at *2.  A defendant may be convicted of multiple offenses if the evidence is sufficient to separately identify the various offenses charged.  Miller v. Commonwealth, 77 S.W.3d 566, 576 (Ky. 2002) (citations omitted).  If "multiple offenses are charged in a single indictment, the Commonwealth must introduce evidence sufficient to prove each offense and to differentiate each count from the others, and the jury must be separately instructed on each charged offense."  Id.  This is consistent with federal law allowing a defendant to be prosecuted for multiple offenses arising out of multiple instances of child abuse over a period of time, so long as the prosecution presents a sufficient factual basis to distinguish each incident.  Cf. Valentine v. Konteh, 395 F.3d 626, 634; 636-67 (6th Cir. 2005).

In a habeas proceeding, the petitioner "'has the burden of establishing his right to federal habeas relief and proving all facts necessary to show a constitutional violation.'"  Caver v. Straub, 349 F.3d 340, 351 (6th Cir. 2003) (quoting Romine v. Head, 253 F.3d 1349, 1357 (11th Cir. 2001)).  While the two sodomy counts alleged in the indictment were identically worded, Morton has not

made any factual allegations to demonstrate that convictions on those counts violated his double jeopardy rights.  He makes no factual allegations suggesting that the time and location of the acts alleged in the indictment were the same.   In both his § 2254 petition and his state court motion, Morton only alleges that the multiple acts of sodomy performed by him constituted a "single course of conduct." [R. 1 at 13; Appx. at 133-34].  This is insufficient to prove a double jeopardy violation, and his claim must therefore be denied.

**F.      Concurrent Sentences**

Finally, in "Ground Thirteen", Petitioner claims that his due process rights were violated when the trial court imposed four consecutive fifteen year sentences despite the jury's recommendation that all sentences be served concurrently. [R. 1 at 16].  Morton raised this claim in his RCr. 60.02 motion, but it was denied by the state court.  Ky. Rev. Stat. § 532.055(2) states in part that "[t]he jury shall recommend whether the sentences shall be served concurrently or consecutively."   The Kentucky Supreme Court, however, has held that a "jury recommendation regarding whether sentences shall be served concurrently or consecutively pursuant to KRS 532.055(2) is not mandatory or binding on a trial judge." Nichols v. Commonwealth, 839 S.W.2d 263 (Ky.1992); see also Murphy v. Commonwealth, 50 S.W.3d 173, 178 (Ky. 2001) (jury's recommendation has no mandatory effect); Holsey v. Kentucky Parole Bd., No. 05-cv-338-KSF, 2006 WL 2375607, *14 (E.D. Ky. 2006) ("It is well settled in Kentucky that the trial court has no mandatory obligation to accept the recommendation of the jury on how multiple sentences should be served.").

As discussed in Section IV. C., *supra*, a state court's alleged misinterpretation of state sentencing statutes is a matter of state concern only.  Moreover, the Supreme Court has observed that the Sixth Amendment does not prohibit the state from choosing to assign to judges, rather than

27

juries, the finding of facts necessary for the imposition of consecutive, rather than concurrent, sentences for multiple offenses.  Oregon v. Ice, 555 U.S. 160, 163-64 (2009).  Accordingly, the imposition of consecutive sentences for Morton's use of a minor in a sexual performance convictions is not contrary to federal law.

### V. CONCLUSION

For the reasons set forth above, IT IS RECOMMENDED THAT Alphonzo Morton's petition for writ of habeas corpus [R. 1] be DENIED.

The parties are directed to 28 U.S.C. § 636(b)(1) for a review of appeal rights governing this Report and Recommendation.  Specific objections to this Report and Recommendation must be filed within fourteen (14) days from the date of service thereof or further appeal is waived.  United States v. Campbell, 261 F.3d 628, 632 (6th Cir. 2001); Thomas v. Arn, 728 F.2d 813, 815 (6th Cir. 1984).  General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal.  Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004); Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995).

Signed March 27, 2012.



Signed By:

*Edward B. Atkins*

**United States Magistrate Judge**